UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ALLEN M. WATTERSON,

       Plaintiff,

vs.                         Case No. 3:06-cv-369-J-HTS

MICHAEL J. ASTRUE,
Commissioner of Social
Security,[1]

       Defendant.

_____

**OPINION AND ORDER**[2]

**I.  Status**

    Allen M. Watterson is appealing the Social Security Administration's (SSA) denial of his claim for Disability Insurance Benefits (DIB).  His alleged inability to work is based on "heart d[i]sease combined with [post traumatic stress disorder,] major depression, inability to p[er]form industrial tasks due to panic attacks, chronic sleep disorder and loss of memory[.]"  Transcript

_____

[1]    Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue, Commissioner of Social Security, is substituted as Defendant herein.

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #8).

of Administrative Proceedings (Tr.) at 184 (capitalization omitted). Plaintiff was found not disabled by Administrative Law Judge (ALJ) Robert Droker in a Decision entered on August 26, 2005. *Id.* at 19, 25, 26 (Finding 13). Mr. Watterson has exhausted the available administrative remedies and the case is properly before the Court.

Plaintiff raises four issues. First, he argues the ALJ did not afford appropriate weight to the Veterans Administration (VA) disability finding. Plaintiff's Brief (Doc. #10; Memorandum) at 1, 8. Next, it is contended "[t]he Commissioner failed to credit, without explanation, portions of [his] own testifying medical expert's opinion as to the impact of Mr. Watterson's difficulty sustaining employment when his symptoms were periodically exacerbated." *Id.* at 1; *see also id.* at 11. Further, Plaintiff alleges the ALJ "failed to explain [the] basis for rejecting the vocational expert's opinion that [his] markedly diminished interest in significant activities would preclude [his] ability to work." *Id.* at 1; *see also id.* at 15. Finally, it is asserted "[t]he Appeals Council abused its discretion in failing to reopen Mr. Watterson's prior decision despite the submission of new and material evidence in the form of a disability finding by the Veteran's Administration." *Id.* at 1; *see also id.* at 17.

- 2 -

## II.  Legal Standard

This Court reviews the Commissioner's final decision as to disability[3] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if . . . supported by 'substantial evidence[.]'" *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).  Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Despite the existence of support in the record, the ALJ's determination may not be insulated from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached.  *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

---

[3]      "Disability" is defined in the Social Security Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A).  An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy.  *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

### III.  Discussion

**A.  Veterans Administration's Determination of Disability**

It is argued "[t]he ALJ failed to accord great weight to the disability determination issued by the Veterans Administration . . . that Mr. Watterson was unemployable due to his partial paralysis of his left forearm and hand and his post traumatic stress disorder effective July 28, 1997." Memorandum at 8.  Defendant contends "the ALJ did not completely disregard the award of benefits by the VA, he simply disagreed with their conclusions after conducting an analysis of the evidence under the standards utilized by the Social Security Administration." Memorandum in Support of the Commissioner's Decision (Doc. #11; Opposition) at 8.

20 C.F.R. § 404.1504 provides:

A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind.  We must make a disability or blindness determination based on social security law.  Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

Although the VA rating is not binding on the ALJ, "it is evidence that should be considered and is entitled to great weight." *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981) (per curiam) (citing *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir.

- 4 -

1980)[4]; see *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984); *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984); *DePaepe v. Richardson*, 464 F.2d 92, 101 (5th Cir. 1972)); *Kieser v. Barnhart*, 222 F. Supp. 2d 1298, 1303 n.1, 1314 n.4 (M.D. Fla. 2002). However, as stated by the Fifth Circuit in *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (internal quotation marks omitted), "ALJs need not give great weight to a VA disability determination if they adequately explain the valid reasons for not doing so."

Here, the ALJ discussed the VA rating, but only in connection with whether the disability finding constituted new and material evidence for purposes of reopening the determination that Claimant was not disabled through September 18, 1998. *See* Tr. at 18-19. Even assuming the ALJ's decision not to reopen the previous decision was correct, Plaintiff's disability status from September 19, 1998, through his date last insured, December 31, 1999, *see id.* at 25 (Finding 1), was still at issue. Therefore, the ALJ should have, at a minimum, considered the VA disability determination

---

[4]     Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), decisions on or before September 30, 1981, of the Fifth Circuit became binding as precedent for the newly created Eleventh Circuit.

finding Mr. Watterson unemployable as of July 28, 1997, as it relates to the relevant period.[5]

The Court expresses no view as to whether the judge should accept or reject the disability rating assigned by the VA.  It is within the province of the ALJ to decide what significance or impact, if any, the disability determination has on the decision in this case.   On remand, the ALJ should make clear the weight afforded the VA finding, and if it is to be rejected, provide valid reasons, supported by substantial evidence, for doing so.

   B.   **TESTIFYING MEDICAL EXPERT**

It is also claimed that "[w]ithout even acknowledging [testifying medical expert] Dr. Neil Lewis' contradictory opinion, the ALJ failed to find that Mr. Watterson suffered from 'on again/off-again periods of exacerbation and some leveling off of his condition' . . . that . . . would make it difficult for him to work 'when the symptomology cranked up.'"   Memorandum at 11 (quoting Tr. at 42).

---

[5]      The Commissioner correctly notes in his brief that "the ALJ did cite to the VA award in his analysis of the evidence[.]"  Opposition at 8.  Still, this citation consisted of a single sentence wherein the ALJ acknowledged the "100% service-connected disability" determination, Tr. at 22, but did not discuss what weight, if any, he was affording it.  Further, the ALJ seemed to implicitly reject the rating by discussing it in a paragraph along with other evidence dated "long after [Mr. Watterson's] eligibility for disability insurance benefits expired[.]"  *Id.*  The judge failed to mention that the VA decision had an effective date of July 28, 1997.  *See id.* at 335.

"Although an ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision . . . ." *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001). Rather, the judge "must explain why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) (citation and internal quotation marks omitted); *see also Gardner v. Barnhart*, 73 F. App'x 193, 195 (9th Cir. 2003). SSR 96-6p clarifies that ALJs "must explain the weight given to [the opinions of agency medical and psychological consultants] in their decisions."

The ALJ "credit[ed] the opinion of medical expert Neil Lewis, Ph.D., a psychologist who testified at the hearing that the claimant did not meet or equal any listing and was capable of low stress, simple work with limited public contact." Tr. at 23. In the course of rendering this opinion, Dr. Lewis was asked by the judge whether "reliability or persistence and pace . . . would be of any issue based upon this record[.]" *Id.* at 36. The psychologist responded that "there might be some impairments in terms of reliab[ilit]y due to . . . the presence of the anxiety symptoms." *Id.* Dr. Lewis later testified that "it would be

certainly tougher [for Claimant to sustain employment on an ongoing basis] when the symptomatology cranked up." *Id.* at 42.[6]

Nevertheless, in his questioning of the Vocational Expert (VE), the ALJ did not incorporate this opinion that Mr. Watterson experienced "on-again/off-again periods of exacerbation and some of leveling off of his condition[.]" *Id.* Although the judge did ask the VE whether the described jobs would permit unexcused absences, *id.* at 70, he did not inquire whether the jobs would accommodate fluctuations in Plaintiff's symptoms. In fact, the VE testified "[i]t's going to be difficult to maintain employment if you're missing [work] on a frequent basis and you do not have the time to take[,]" *id.* at 72, and that most unskilled jobs carried a probationary period before time off begins accruing, varying from thirty days to six months. *Id.* at 71-72. As this case is being

---

[6]     The full exchange went as follows:

> ATTY: Now, Doctor, in your review of the entire records -- I believe you brought them all the way up to 2004, regarding Mr. Watterson -- you mentioned earlier about the longitudinal record. Did you notice or did you -- within the records, on-again/off-again periods of exacerbation and some of leveling off of his condition?
>
> ME:   I think that would be a fair characterization.
>
> ATTY: Okay.  And do you believe this situation of exacerbations and leveling of[f] would be condu[c]ive of someone who would be able to sustain employment on an ongoing basis?
>
> ME:   Well, it would be certainly tougher for him when the symptomatology cranked up.

*Id.*

remanded on other grounds, the ALJ should consider this aspect of Dr. Lewis's opinion and its effects on Claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. If Dr. Lewis's opinion is to be rejected, a sufficient basis must be provided.

### C.   VOCATIONAL EXPERT

Mr. Watterson asserts "[t]he ALJ also ignored and failed to credit the VE's testimony that a 'marked diminished interest in participation in significant activities' would make it difficult for [him] to maintain employment." Memorandum at 15. In that regard, he argues "[t]he ALJ . . . erred in relying on the VE's response to a hypothetical question that did not include Mr. Watterson's markedly diminished interest in significant activities." *Id.* at 16.

For VE testimony to provide substantial evidence of a claimant's ability to work, the hypothetical question eliciting that testimony must have described adequately all significant impairments and other occupational factors. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.7 (11th Cir. 2004) (question must include all impairments); *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (per curiam) (VE testimony needs to relate to person with claimant's education, skills, experience, and limitations).

- 9 -

The necessity of comprehensiveness does not, of course, extend to limitations properly rejected by the ALJ. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam).

In specifying the claimant's impairments, the judge is not required to use diagnostic terms or refer to the medical conditions themselves. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999) (citing *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996)). Rather, the individual's functional limitations are to be conveyed to the expert. *See Webb*, 368 F.3d at 633.

The ALJ propounded a hypothetical that included the following limitations:

> He's to avoid ladders and unprotected heights. He is to avoid the operation of heavy, moving machinery. H[e] needs a low stress work environment. He can occasionally bend, stoop, crawl, kneel or crouch; limited contact with the public; needs to avoid repetitive grasping with the left [hand] and limited tactile feeling from the left hand.

Tr. at 66. The limitation that Plaintiff "needs simple tasks" was also included. *Id.* at 68; *see also id.* at 26 (Finding 6). Based on a sedentary to light exertional level, the VE responded with three potential occupations: mail sorter, odd-piece checker, and cutter-and-paster of press clippings. *See id.* at 68-69; *see also id.* at 26 (Finding 12).

During cross-examination of the VE, Plaintiff's counsel added to the hypothetical the limitation of "marked[] diminished interest in participation in significant activities." *Id.* at 77 (internal quotation marks omitted).  The inclusion of this limitation was based on a report from Dr. Fenton Lebon indicating the same.  *See id.* at 409.  In response to the revised hypothetical, the VE stated "[e]mployment[] . . . requires some degree of interest.  You . . . certainly have to be interested enough to get up to function.  A limitation like that could affect persistence and pace and reliability, so it would be difficult to maintain employment." *Id.* at 77.  Given the VE's response to the rephrased hypothetical, it is evident the omitted limitation, if accepted, may have impacted the VE's conclusion.

The Decision references the report from Dr. Lebon.  *See* Tr. at 22.  Yet, nowhere does the ALJ mention the statement as to marked diminished interest.  Perhaps Dr. Lebon's description of the condition is merely meant to relay Mr. Watterson's own claims.  The phrase appears in the history portion of the report and is followed by sentences beginning, "The patient also stated . . . ." and, "The patient complains . . . ." *Id.* at 409-10.  On the other hand, it is preceded by statements seemingly intended to represent Dr. Lebon's own opinions, such as "Patient also fits criterion C for PTSD . . . ." *Id.* at 409.  Given that context, and the potential

significance of the matter, it is incumbent upon the ALJ to conduct an explicit examination thereof in the first instance.

Consistent with the foregoing, the case will be remanded for the ALJ to more fully consider the evidence from Dr. Lebon and, as necessary, propound a complete hypothetical question that includes an accurate rendition of Plaintiff's limitations.

### D.   FAILURE TO REOPEN PRIOR DECISION DENYING DIB

Finally, Claimant alleges "[t]he ALJ erred in failing to reopen [his] prior denial of benefits despite the receipt of the VA's disability determination effective July 28, 1997." Memorandum at 17.

"As a general matter, district courts do not have jurisdiction over the Commissioner's refusal to reopen a claim, since such a refusal is not a 'final decision' within the meaning of § 405(g)." *Cash v. Barnhart*, 327 F.3d 1252, 1256 (11th Cir. 2003) (per curiam) (citing *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977)).   The regulations specifically state that denials of "request[s] to reopen a determination or decision" are not subject to judicial review.   20 C.F.R. § 404.903(l).   However, the Eleventh Circuit has recognized two exceptions to this rule.   "Subject matter jurisdiction exists . . . where a final decision on a prior 'social security claim is in fact reopened and reconsidered on the merits to any extent on the administrative level.'"   *Cash*, 327 F.3d at

1256 (quoting *Sherrod v. Chater*, 74 F.3d 243, 245 (11th Cir. 1996) (per curiam)).  "[S]ubject matter jurisdiction [also] exists when the claimant raises a colorable constitutional issue." *Id.* at 1257 n.8 (citing *Sherrod*, 74 F.3d at 245).

Claimant argues "a colorable constitutional claim exists due to the Commissioner's explicit violation of a regulation that required the ALJ to apply circuit court case law."  Memorandum at 18.  According to Mr. Watterson, this "refusal to comply with mandatory regulations resulted in a due process violation and requires reversal of the ALJ's decision not to reopen the prior denial."  Memorandum at 19.

In his Decision, the ALJ explained that because "the Social Security Administration has thus far declined to issue an acquiescence ruling with respect to either" the Ninth Circuit's decision in *McCartey v. Massanari*, 298 F.3d 1072 (9th Cir. 2002), or the Eleventh Circuit's decision in *Brady v. Heckler*, 724 F.2d 914 (11th Cir. 1984) (per curiam), Tr. at 18-19, Claimant's reliance on those cases for the proposition "that a VA disability determination qualifies as 'material evidence' sufficient to establish good cause for reopening" is misplaced.[7]  *Id.* at 18.

---

[7]     20 C.F.R. § 404.988 provides that "[a] determination, revised determination, decision, or revised decision may be reopened . . . [w]ithin four years of the date of the notice of the initial determination if we find good cause[.]" 20 C.F.R. § 404.989 explains that good cause will be found if "[n]ew and material evidence is furnished[.]"

- 13 -

Arguably, an ALJ who refuses to apply controlling law commits an error of constitutional proportions.  *See, e.g., McCarty v. Bowen*, No. 85-229, 1986 WL 83395, at *5 (D. Vt. Aug. 25, 1986) (refusal to adhere to circuit's treating physician rule in earlier determination "raises a constitutional issue" allowing the court "to review the denial of the motion to reopen").  Similarly, it has been said that "[a]rbitrary and capricious actions violate due process[,]" *Olson v. Hart*, 965 F.2d 940, 943 (10th Cir. 1992), and at times the SSA has conceded a court's authority to "review whether the ALJ's refusal to reopen was arbitrary or capricious." *Rooney v. Shalala*, 879 F. Supp. 252, 257 (E.D.N.Y. 1995).  Even in the absence of an arbitrary or capricious refusal to comply with the law, an ALJ who decides not to reopen a petition based on a misinterpretation of a federal regulation may impact the claimant's right to due process.  *See Gallegos v. Shalala*, No. 93-Z-310, 1994 WL 706933, at *1 (D. Colo. Aug. 3, 1994).  *But cf., e.g., Doan v. Sec'y of Health & Human Servs*. 680 F. Supp. 1146, 1149 (S.D. Ohio 1987) ("[T]he mere allegation that the Secretary failed to follow his own regulation does not raise a colorable constitutional claim. Whether the violation of a regulation rises to the level of a due process violation is dependent upon the violation's impact upon the claimant's opportunity to be heard." (footnote omitted)).

However, assuming Plaintiff has raised a reviewable constitutional issue, it does not provide an independent reason for remand in this case.  Claimant's argument revolves around the ALJ's alleged "violation of 20 C.F.R. §404.985[.]"  Memorandum at 17; *see also id.* at 18 ("[A] colorable constitutional claim exists due to the Commissioner's explicit violation of a regulation that required the ALJ to apply circuit court case law."), 19 ("The ALJ's refusal to comply with mandatory regulations resulted in a due process violation[.]").[8]  That regulation indicates the SSA "will apply a holding in a United States Court of Appeals decision that *[it] determine[s]* conflicts with" its own "interpretation of a provision of the Social Security Act or regulations[.]"  20 C.F.R. § 404.985(a) (emphasis added).  In those instances in which a conflict is recognized, the administration "will issue a Social Security Acquiescence Ruling."  *Id.* at § 404.985(b).  The regulation does not appear to command that individual agency adjudicators apply judicial holdings in the absence of an Acquiescence Ruling.  Thus, Plaintiff's assertion the judge violated his due process rights by refusing to obey 20 C.F.R. § 404.985 must be deemed unpersuasive.

---

[8]    Therefore, the Court does not address whether the cited regulation itself violates due process, whether the Commissioner failed to comply with the regulation by not issuing an acquiescence ruling under the circumstances, or whether the ALJ infringed Plaintiff's constitutional rights in some other way.

## IV.  Conclusion

In accordance with the foregoing, it is hereby **ORDERED:**

The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** this matter with instructions to: 1) make clear the weight he is affording the VA rating, and if the rating is to be rejected, provide valid reasons for doing so; 2) consider the opinion of testifying medical expert Dr. Neil Lewis that Claimant experienced on-again/off-again periods of exacerbation and leveling off of his condition; 3) fully consider the evidence from Dr. Lebon and, to the extent rendered necessary, propound a complete hypothetical question that includes an accurate rendition of Plaintiff's limitations; and 4) conduct any other proceedings deemed proper.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of February, 2007.


/s/         Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE


Copies to:

Counsel of record
      and pro se parties, if any

- 16 -